UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILMA FOSTER,<br><br>        Plaintiff,<br><br>      v.<br><br>SCENTAIR TECHNOLOGIES, INC., et al.,<br><br>        Defendants. | Case No. 13-cv-05772-TEH<br><br>**ORDER GRANTING MOTION TO DISMISS** |

This matter came before the Court on June 2, 2014, on Defendant Tim Micklos' ("Micklos") motion to dismiss Plaintiff Wilma Foster's ("Foster")'s Third Cause of Action, which alleges sexual harassment in violation of California's Fair Employment and Housing Act, California Government Code section 12940, *et seq.* ("FEHA"). After carefully considering the parties' written and oral arguments, and relevant law, the Court now GRANTS Micklos' motion to dismiss WITH LEAVE TO AMEND.

**BACKGROUND**

Foster, an African-American woman, was an Account Executive for Defendant ScentAir Technologies, Inc. ("ScentAir") in the San Francisco Bay Area. Complaint ("Compl.") ¶¶ 1, 16 (Docket No. 2). Micklos was her supervisor from December 2012 through her termination on or about June 27, 2013. *Id.* ¶¶ 3, 16, 20. Foster alleges the following. On April 11, 2013, Foster met with Micklos in a VIP conference room at a hotel in Burlingame, California; ScentAir would schedule meetings at hotels because ScentAir does not have offices in California. *Id.* ¶ 17. During the meeting, Micklos asked her whether she "would like to go back to [his] room" and expressed that it would be "more comfortable" there. *Id.* He then asked her questions about herself, including whether she and her husband liked going into San Francisco for recreation, and – after she responded that she was single – Micklos told her: "a woman like you needs to have a man

to take care of her . . . you know what I mean." *Id.*

After leaving the meeting, Foster alleges that Micklos treated her poorly: he gave away accounts and sales leads in her territory to others; when questioned about it, he responded that "[he is] the supervisor," and that she should "not question any decisions" that he made; he did not allow her to attend a training which she had previously been told she would attend; and when asked about the training sessions, Micklos became combative and told her that training her was no longer in his budget, and told her again that he can change his mind when he wants. *Id.* ¶ 18. Foster also alleges that Micklos failed to take corrective action after hearing an account representative make a racially insensitive remark about driving in the "ghetto" while on a group telephone call. *Id.* ¶ 19. Six days after reporting Micklos' alleged failure to take corrective action to ScentAir human resources, Foster was fired for falsifying documents, a charge which she denies. *Id.* ¶ 20. Foster brings claims under the FEHA for discrimination and harassment on the basis of race and sex, retaliation, failure to prevent discrimination and retaliation, and wrongful termination. Miklos moves to dismiss only Foster's Third Cause of Action, which alleges harassment on the basis of sex, in violation of California Government Code section 12940(j).

**LEGAL STANDARD**

Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure[1] when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).

Under Federal Rule of Civil Procedure 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" with sufficient specificity to "give the

---

[1] All references to "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

2

defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007) (citation and quotation marks omitted). "Rule 8 . . . does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). The Court, however, is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the deficiencies in the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

**DISCUSSION**

Micklos argues that Foster's complaint fails to state a plausible claim for sexual harassment under FEHA, and thus her Third Cause of Action should be dismissed. FEHA prohibits an employer from harassing an employee on several articulated bases, including sex. Cal. Gov't Code § 12940(j)(1). Sexual harassment under FEHA may be alleged under two theories: (1) on a quid pro quo basis, where a term of employment is conditioned upon submission to unwelcome sexual advances; or (2) for creation of a hostile work environment. *Hughes v. Pair*, 46 Cal. 4th 1035, 1043 (2009) (citation omitted). Foster maintains that her facts, as alleged, support claims under both theories whereas Micklos contends that her claims fail under either. The Court agrees with Micklos.

## I. Foster Fails to State a Claim for Quid Pro Quo Sexual Harassment.

"A cause of action for quid pro quo harassment involves the behavior most commonly regarded as sexual harassment, including, e.g., sexual propositions, unwarranted graphic discussion of sexual acts, and commentary on the employee's body and the sexual uses to which it could be put." *Mogilefsky v. Superior Court*, 20 Cal. App. 4th 1409, 1414 (1993) (citation omitted). "To state a cause of action on this theory, it is sufficient to allege that a term of employment was expressly or impliedly conditioned upon acceptance of a supervisor's unwelcome sexual advances." *Id.* (citing *Bihun v. AT&T Information Systems, Inc.*, 13 Cal. App. 4th 976, 1005 (1993)).

While Foster contends that she has properly pleaded a quid pro quo sexual harassment claim in her opposition briefing, *see* Opp'n at 6:13-18 (Docket No. 24), the complaint is devoid of any factual allegation that Micklos conditioned a term of employment, either expressly or impliedly, on Foster's acceptance of his alleged unwelcome sexual advances. This pleading omission is fatal to the Third Cause of Action, to the extent Foster seeks to recover under a quid pro quo theory. *Cf. Zapponi v. CSK Auto, Inc.*, No. C02-0536 TEH, 2002 WL 31750219, at * 7-8 (N.D. Cal. Dec. 4, 2002) (granting summary judgment to employer on quid pro sexual harassment claim under FEHA based on evidence that regional manager invited her to have dinner with him, asked if she was going to leave her boyfriend, where other conversations were not sexual in nature, and no evidence existed that manager conditioned opportunities for advancement at work on acceptance of his allegedly sexual requests). To the extent Foster maintains that her Third Cause of Action states a sexual harassment claim under a quid pro quo theory, Micklos' motion to dismiss is GRANTED WITH LEAVE TO AMEND.

## II. Foster Fails to State a Claim for Hostile Work Environment Sexual Harassment.

To state a sex-based hostile work environment claim, Foster must plead that (1) she was subjected to verbal or physical contact of a sexual nature, (2) the conduct was

4


unwelcome, and (3) the abusive conduct was sufficiently severe or pervasive so as to alter the conditions of her employment thus creating an abusive working environment. *Sheffield v. Los Angeles Cnty. Dep't of Soc. Servs.*, 109 Cal. App. 4th 153, 161 (2003); *Miller v. Department of Corrections*, 36 Cal. 4th 446, 462 (2005). As a general matter, with respect to pervasiveness, there is no recovery "for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature." *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 283 (2006) (citation omitted). Similarly, with respect to severity, generally "liability for sexual harassment may not be imposed based on a single incident that does not involve egregious conduct akin to a physical assault or the threat thereof." *Id.* at 284 (citing *Herberg v. California Institute of the Arts*, 101 Cal. App. 4th 142, 150-153 (2002)). "To be actionable, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* (citation and quotation marks omitted). Whether there is a hostile work environment must be determined from the totality of the circumstances, including (1) the nature of the unwelcome sexual acts or words (with physical touching generally considered more offensive than mere words); (2) the frequency of the offensive acts or encounters; (3) the total number of days over which all the offensive conduct occurred; and (4) the context in which the sexually harassing conduct occurred. *Sheffield*, 109 Cal. App. 4th at 162.

Micklos argues that Foster fails to plead a plausible hostile work environment sexual harassment claim because Micklos' alleged comments in the hotel conference room on April 11, 2013 are facially neutral, or at most, equivocal comments made during a single conversation, and thus cannot, as a matter of law, rise to the level of the "severe" or "pervasive" abusive conduct that alters the conditions of employment. The Court agrees that these comments, along with Foster's other alleged conduct, do not state a plausible claim for relief.

First, the alleged abusive conduct by Micklos is not sufficiently pervasive so as to

1    alter the conditions of employment and create a hostile work environment.  Under the
2    totality of the circumstances, Foster alleges no conduct that involved physical touching,
3    physical sexual contact, or a graphic discussion of sex.  The only instance of alleged
4    abusive conduct relating to sex is found in three equivocal remarks made by Micklos on
5    April 11, 2013, during the course of a single conversation.  Foster does not allege that
6    Micklos made any unwanted sexual acts or said anything of a sexual nature thereafter; she
7    only alleges that Micklos failed to take corrective action in response to another employee's
8    racially insensitive remark about driving in the "ghetto."  In short, Foster does not allege a
9    concerted pattern of sexual harassment of a repeated, routine, or a generalized nature.
10   *Lyle*, 38 Cal. 4th at 283.  Thus, Foster has failed to plead that Micklos' conduct was
11   pervasive.  Rather, the alleged conduct, at most, resembles the occasional, isolated,
12   sporadic, or trivial harassment for which there is no recovery under a hostile workplace
13   theory.  *See id*. at 284 (quoting *Smith v. Northwest Financial Acceptance, Inc*. 129 F.3d
14   1408, 1414 (10th Cir. 1997) ("[I]solated incidents of harassment, while inappropriate and
15   boorish, do not constitute pervasive conduct.")).

16       Foster nonetheless argues that *Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009),
17   stands for the proposition that Micklos' alleged poor treatment of Foster after the rebuffed
18   sexual advances – including but not limited to withholding training sessions and taking
19   away account leads – establish that the alleged abusive sexual harassment was pervasive.
20   Foster reads *Roby* too broadly.  In *Roby*, the California Supreme Court held that the
21   appellate court erred by allocating evidence between the plaintiff's discrimination and
22   harassment claims, and then ignoring the discrimination evidence when analyzing the
23   sufficiency of the harassment verdict.  *Id.* at 711.  Of relevance here, the *Roby* court noted
24   that *Miller v. Department of Corrections* "makes clear that some official employment
25   actions done in furtherance of a supervisor's managerial role can also have a secondary
26   effect of communicating a hostile message," but "[t]his occurs when the actions establish a
27   widespread pattern of bias." *Id*. at 709.  For example, in *Miller*, the court held that
28   widespread sexual favoritism in the workplace, provided it was so severe or pervasive as to

6

alter the working conditions of the workplace, 36 Cal. 4th at 466, could give rise to an actionable hostile work environment claim because of the "demeaning message" such widespread favoritism could convey "to female employees that they are viewed by management as 'sexual playthings' or that the way required for women to get ahead in the workplace is to engage in sexual conduct with their supervisors or the management." *Id*. at 451.  Thus, *Roby* and *Miller* stand for the unremarkable proposition that a supervisor's official actions may have the effect of communicating a message of widespread bias, when those actions and the message conveyed therein are sufficiently severe or pervasive to create a hostile work environment.  Here, allegations to this effect – of widespread workplace bias and the demeaning message conveyed by official actions – are missing from Foster's pleadings.  *Roby* does not bridge the gap from possibility to plausibility necessary to show that Micklos' failure to correct a racially insensitive remark and Micklos' alleged poor treatment as embodied by management decisions transmute all of those actions into widespread acts of harassment in the workplace, meant to convey a demeaning message on the basis of sex, potent enough to create an objectively abusive and hostile working environment.

Second, the alleged abusive conduct by Micklos is not sufficiently severe or extreme so as to alter the conditions of employment and create a hostile work environment. "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct.  Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Mokler v. Cnty. of Orange*, 157 Cal. App. 4th 121, 142 (2007) (citations, brackets, and quotation marks omitted); *cf. Herberg*, 101 Cal. App. 4th at 151-52 (collecting cases and noting that in the absence of pervasive conduct, conduct that can be considered "severe in the extreme" may be create a hostile work environment).  Here, none of the alleged conduct involved inappropriate physical contact, let alone violence, or threats thereof.  *See Sheffield,* 109 Cal. App. 4th at 153 (finding that threat of violence made otherwise boorish or overbearing behavior actionable because added aspect of

violence could be found to have changed the conditions of employment).  Nor did Micklos' alleged comments contain vulgar, demeaning, or offensive gender-based terms. *See Lyle*, 38 Cal. 4th at 281 (quoting *Dept. Fair Empl. & Hous. v. Nulton,* FEHC Dec. No. 03-10, 2003 WL 22733897, at *4, *7 (Sept. 16, 2003) ("recognizing the male employee's repeated use of 'fucking bitch' and one-time use of 'cunt' were severe, within the meaning of the FEHA, 'given these sex-based terms' inherently degrading and demeaning nature'")).  Given the lack of pervasiveness, and the non-extreme nature of these – at best – equivocal comments made by Micklos, Foster fails to allege abusive conduct that is sufficiently severe so as to alter the conditions of employment by creating an objectively abusive and hostile working environment.

Foster, however, argues that because Micklos was her supervisor, the severity and pervasiveness requirement should be relaxed.  Foster cites to *Dee v. Vintage Petroleum, Inc.*, 106 Cal. App. 4th 30, 35 (2003), for the proposition that while "a single offensive act by a co-employee is not enough to establish employer liability for a hostile work environment . . . where that act is committed by a supervisor, the result may be different." In *Dee*, an employee sued her employer for hostile work environment harassment on the basis of race and national origin.  The supervisor asked her to lie about company business, to secretly take a document from the desk of another supervisor, blamed her for tasks he ordered her to perform, insulted her by calling her a "bitch" and constantly used the word "asshole" in her presence. *Id*. at 33-35.  He warned her that "if someone caused trouble for him . . . he'd drag that person down." *Id*. at 33.  When she questioned her supervisor, he inquired about her race and national origin, and responded "Well, it is your Filipino understanding versus mine." *Id*. at 33.  The court observed that this remark was an ethnic slur, both abusive and hostile, and that a reasonable trier of fact could infer that the slur was not an isolated event but rather, when combined with the other conduct, explained the supervisor's motivation for creating an abusive environment for her. *Id*. at 37.

*Dee* is distinguishable from the conduct alleged by Foster here.  The supervisor in *Dee* berated the plaintiff, insulted her, used profanity in her presence, and explicitly and

8

unequivocally used an ethnic slur to her in an abusive and hostile manner. No such unequivocal sexual harassment occurred here. Rather, Foster points to the three comments drawn from the incident at the hotel, and the failure to correct an employee for referring to a "ghetto" several months later. In contrast to the ethnic slur in *Dee*, which was sufficiently severe to create an inference of harassment on the basis of race or national origin that explained the supervisor's motivation for engaging in the other conduct that the court found relevant, Micklos' alleged conduct here does not approach this level of severity. This conclusion is bolstered by the fact that Foster alleges no other incidents of sexual harassment that could give rise to a showing of pervasiveness. Lastly, the additional authorities relied on by Foster to rehabilitate the lack of severity and pervasiveness do not compel a different conclusion. The Ninth Circuit in *Brooks v. City of San Mateo*, 229 F.3d 917, 927 n. 9, stated that "a sexual assault by a supervisor even on a single occasion, may well be sufficiently severe as to alter the conditions of employment and give rise to a hostile work environment claim," but Foster here does not allege that a sexual assault occurred, or that Micklos otherwise touched her. Additionally, Foster cites *Rodgers v. Western -Southern Life Ins. Co.*, 12 F.3d 668, 674-75 (7th Cir. 1993) (citations omitted), for the proposition that there is no "threshold 'magic number' of harassing incidents that give rise . . . to liability" and that "[p]erhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' . . . than the use of an unambiguously racial epithet . . . by a supervisor in the presence of subordinates." This is true, but of little help to Foster, given the absence of such unambiguous words or acts. What *Dee*, *Brooks*, and *Rodgers* show, consistent with the above-cited authorities, is that in the absence of pervasiveness, the abusive conduct must be extreme. The ethnic slur in *Dee* (in addition to the other acts of harassment), the sexual assault by supervisor example in *Brooks*, or the unambiguously racial epithet in *Rodgers* fit that bill. Foster's alleged conduct here does not, and accordingly, Foster fails to state a plausible claim that Micklos' conduct was sufficiently severe or pervasive so as to alter the conditions of her employment, thus creating an abusive working environment. Therefore,

9

she has not stated a claim for sexual harassment based on a hostile work environment theory. Accordingly, Micklos' motion to dismiss her Third Cause of Action is GRANTED WITH LEAVE TO AMEND.

**CONCLUSION**

For the reasons discussed above, as currently pleaded, Foster has failed to state a FEHA claim for sexual harassment under either a quid pro quo or hostile work environment theory. The Court GRANTS Micklos' motion to dismiss Foster's Third Cause of Action WITH LEAVE TO AMEND. Any amended pleading shall be filed by Foster no later than **July 10, 2014**.

**IT IS SO ORDERED.**

Dated:   06/10/14                              _____
                                               THELTON E. HENDERSON
                                               United States District Judge

10